UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNEST HOLDINGS, INC., | ) |
| PLAINTIFF, | ) |
| v. | ) |
| ASCENSUS, LLC; ASCENSUS BROKER DEALER SERVICES, LLC; and ASCENSUS COLLEGE SAVINGS RECORDKEEPING SERVICES, LLC, | ) C.A. No. 21-cv-00204-MSM |
| DEFENDANTS. | ) |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

This matter comes before the Court on the Motion to Dismiss of Defendants Ascensus, LLC, Ascensus Broker Dealer Services, LLC, and Ascensus College Savings Recordkeeping Services, LLC (together "Ascensus"), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. (ECF No. 21.) The plaintiff, UNest Holdings, Inc. ("UNest"), has filed the instant lawsuit against Ascensus alleging federal and state antitrust claims, as well as tortious interference with contractual relations. (ECF No. 1.) Because the Court finds that the plaintiff has not sought the appropriate relief from final judgment in an earlier federal lawsuit, the Motion to Dismiss is DENIED without prejudice and

1

this case is STAYED for 90 (ninety) days during which time the plaintiff may seek the necessary relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

The parties to this case are not unfamiliar to this Court. The Internal Revenue Code authorizes certain college savings accounts under 26 U.S.C.A. § 529 ("529"). These savings plans are tax-exempt, and government-sponsored and include Rhode Island's state sponsored CollegeBound 529 plan ("RI Program") overseen by the Office of the General Treasurer. *Id.* ¶ 2. In Rhode Island, Ascensus acts as the program manager on behalf of the General Treasurer. *Id.* A non-party, Invesco Distributors, Inc. ("Invesco"), has a contract with Ascensus to serve as the distributor of the RI Program. UNest, is listed as Registered Investment Advisor with the Securities and Exchange Commission.

### A. The UNest App and Previous Litigation

In 2018, UNest launched a mobile application ("App") for college savings plans. *Id.* ¶ 30. The App can be used on Apple and Android devices by UNest clients to invest in 529 plans. *Id.* In its Complaint, UNest describes a simple four step process for creating a 529 plan, which it offers at $3.00 per month and which avoids some of the formalities and expenses of traditional 529 investments (*e.g.*, meeting in person with an investment broker). *Id.* ¶ 31-38.

UNest and Invesco executed an agreement in 2018 allowing UNest "to recommend, on a non-exclusive basis, Invesco-managed municipal fund securities in the RI Program." *Id.* ¶ 44. Until 2019, UNest registered in-state and out-of-state

client accounts on its App and those users were able to invest in the RI Program. *Id.* ¶ 45. Then, in October 2019, Invesco terminated the agreement with UNest effective November 30, 2019.[1] *Id.* at 11. As a result, UNest was poised to lose access to the RI Program's online portal for clients and advisors. *Id.* ¶ 46. Invesco directed UNest to discuss portal access with Ascensus, which owns the portal and controls access. *Id.* at ¶ 49.

UNest's portal access was critical to the App during the period when UNest needed to roll over clients from the RI program into an alternative program after the Invesco contract terminated. *Id.* ¶ 50. This is the point at which UNest initiated the first of two previous lawsuits. UNest filed the first of these lawsuits in Rhode Island state court against both Invesco and Ascensus to preserve access to the client/advisor portal. *Id.* ¶ 51. The parties eventually settled that case ("State Settlement Agreement") and UNest proceeded to roll its client accounts into a similar 529 plan program in New York ("NY Program"). *Id.* ¶ 52. Ascensus, it turns out, provides the same management services in New York as it does in Rhode Island, with JPMorgan Asset Management ("JPM") acting as the program distributor in New York. *Id.* ¶ 54. UNest's rollover of clients to the NY Program, however, was cut short and JPM terminated UNest's access to the NY Program effective January 6, 2020, because the UNest accounts were deemed "high risk." *Id.* ¶56. UNest disputes that characterization and alleges that Ascensus, as the management services provider for

---

[1] UNest was terminated after including references to Invesco in promotional materials without Invesco's permission.

both the RI and NY Programs "wrongfully and maliciously caused JPM to terminate UNest's NY Program selling agreement…." *Id.* ¶ 57.  According to UNest, Ascensus' conduct violated the State Settlement Agreement and, in response, UNest initiated the second of its earlier lawsuits seeking an emergency injunction in this Court to maintain access to RI Program accounts for its clients and to maintain the App's access to 529 plans in the RI Program until the accounts were successfully rolled over. *Id.* ¶¶ 65-66.[2]  In addition to injunctive relief, UNest requested the Court's leave to file a Second Amended Complaint which alleged antitrust claims against Ascensus stemming from what UNest describes as anticompetitive behavior in "(1) the market for app-based financial advisory services for 529 plans, and (2) the market for app-based account management services for 529 plans in multiple states." *Id.* ¶ 69.

During the hearing in this Court on UNest's motions, UNest's attorney questioned whether the anticompetitive activity it alleged on the part of Ascensus was driven by its desire to eliminate competition in the app-based market while Ascensus developed an app itself. *Id.* ¶ 73.  In response, Ascensus' counsel stated, "We're not developing [an app]; this isn't some conspiracy to knock UNest out," described UNest's concern as a "wild theory" and asked, "Well, where's the evidence that [we] were developing an app or these other things?" *Id.* ¶¶ 73-74 (alteration in original).  UNest's request for an injunction was denied, but its motion to file a Second Amended Complaint was granted. *Id.* ¶ 77.  Soon after the hearing, the parties

---

[2] The prior federal lawsuit, U-Nest Holdings, Inc. v. Ascensus College Savings Recordkeeping Services, was filed on December 20, 2019, and docketed as C.A. No. 1:19-cv-00659-WES-PAS.

entered into a settlement agreement ("Federal Settlement Agreement"). *Id.* ¶ 78. UNest avers that it relied upon the representation that Ascensus was not developing an app, which UNest alleges induced it to settle with Ascensus. *Id.* UNest contends that it believed its antitrust claims against Ascensus were substantially weakened in the absence of an Ascensus app in the pipeline, which, UNest further contends, led it to settle with Ascensus. *Id.* ¶¶ 79-80. The case was then dismissed with prejudice.

### B. The Ascensus App and Present Litigation

Roughly thirteen months after the parties settled the prior federal case, Ascensus unveiled its own app ("Ascensus App"). *Id.* ¶ 81. According to UNest, the Ascensus App has several "features [that are] materially similar to the key account management features of the UNest App, utilizing much of the same available data and controls over a customer's particular 529 plan account." *Id.* ¶ 87-89. In addition to the allegedly similar functions, UNest describes the Ascensus app as having comparable visuals – including color scheme. *Id.*

The release of the Ascensus App triggered this lawsuit. UNest alleges that developing the Ascensus App "would require a multi-phased approach and would take at least twenty-four (24) to thirty (30) months from conception until launch." *Id.* at ¶ 92. By UNest's calculations, Ascensus would have already been in the planning and development stages of its app when UNest was attempting to rollover its client accounts from the RI Program to the NY Program; UNest maintains that at the time when Ascensus' counsel "informed the Court that Ascensus was not developing an app to compete with UNest, that statement was *false*." *Id.* ¶¶ 94-95 (emphasis in

original).  UNest contends that Ascensus sought to eliminate UNest from the market for 529 program apps while it developed its own competing app.  Additionally, UNest alleges that Ascensus tarnished UNest's reputation with Union Bank & Trust ("UBT") in Illinois which led to UNest's termination from the Illinois 529 plan program ("IL Program").  *Id.* at ¶¶ 99-102.

Since its termination from the RI, NY, and IL Programs, UNest alleges that it has "had no choice but to change its business model in November of 2020 from marketing investments in 529 plans to marketing investments in a different form of tax-advantaged savings plan known as a Uniform Transfers to Minors Act ("UTMA") account.  *Id.* ¶ 104.  UNest's summary of its claims against Ascensus proposes that "Ascensus abused its market power and clout in the market for 529 plan management services to **expel** UNest from the markets for (1) app-based financial advisory services for 529 plans and (2) app-based account management services for 529 plans in order to make the markets more attractive through cutting the competition for the eventual launch of its own product, the Ascensus App."[3]  *Id.* ¶ 106 (emphasis in original).  UNest claims to have lost nearly 2,000 clients following its pivot from 529 financial advisory services to UTMA account services and lost more than $200,000 in value.  *Id.* ¶¶ 108-109.  UNest further alleges revenue losses and stunted growth, significant legal fees, expenses associated with business model transition, and missed

---

[3] After Ascensus launched its app, it "announced that two investment firms were buying a majority stake in Ascensus in a deal worth approximately $3 billion." ECF No. 1, ¶ 96.

fundraising opportunities. *Id.* ¶¶ 113-116.  UNest estimates these losses to the be in the millions of dollars.  *Id.* ¶¶ 113-118.

While UNest acknowledges in its Complaint that it executed a settlement agreement, which included a release[4], as part of the termination of the prior federal case, it argues the Federal Settlement Agreement and release are of no moment.  *Id.* ¶ 120.  UNest contends in its Complaint that the release is not a bar to the instant

---

[4] The release provides:
> U-Nest, for itself and for its current and former parents and subsidiaries, predecessors, successors (including any trustee or debtor-in-possession), assigns, affiliates, attorneys, insurers, reinsurers, officers, directors, members, managers, principals, commissioners, shareholders, owners, agents, consultants, and employees (the "Releasing U-Nest Parties") forever fully and completely releases and discharges Invesco and Ascensus, their current and former parents and subsidiaries, predecessors, successors (including any trustee or debtor-in-possession), assigns, affiliates, attorneys, insurers, reinsurers, officers, directors, members, managers, principals, commissioners, shareholders, owners, agents, consultants, and employees, of and from any and all actions, suits, claims, duties, causes of action, demands, obligations, liabilities, rights, damages (including punitive, exemplary, consequential, incidental or lost profit damages), or liability of any nature whatsoever, of any kind, whether known or unknown (including Unknown Claims, as defined below), asserted or unasserted, whether at law or in equity which they now have, or ever had or may have, arising out of, based upon or attributable to, in whole or in part, or relating in any manner to (1) the subject matter of (i.e., the facts giving rise to) the Litigation, (2) the Selling Agreement, or (3) any aspect of the RI Program (the "Claims Released by U-Nest"). For the avoidance of doubt, the Claims Released by U-Nest do not include any actual or potential claim, whether known or unknown, involving UNest's participation in any Non-RI Programs.
> (ECF No. 23-1 at 4.)

7

lawsuit because (1) Ascensus' engaged in anticompetitive conduct *after* the parties settled and (2) Ascensus made false statements about the Ascensus App development which fraudulently induced UNest to settle in the first place. *Id.* ¶¶ 120-124. UNest alleges violations of the Sherman Act, 15 U.S.C.A. § 2, for unlawful monopolization, attempt to monopolize, and denial of access to essential facility, violation of the Sherman Act under § 1 for exclusive dealing, violation of R.I.G.L. § 6-36-5 of the Rhode Island Antitrust Act for attempt to monopolize, and, lastly, tortious interference with contractual relations.

### C. Ascensus' Motion to Dismiss

Ascensus has moved to dismiss. Ascensus first argues that the Federal Settlement Agreement is enforceable and contains a broad release of "any and all" claims "of any nature whatsoever, of any kind, whether known or unknown . . ., asserted or unasserted, whether at law or in equity which [UNest] now ha[s], or ever had, or may have . . ." against Ascensus (ECF No. 21-1 at 19.) Next, Ascensus raises the doctrine of res judicata as a bar to UNest's claims. *Id.* at 23. And, finally, Ascensus attacks the sufficiency of UNest's claims and argues that the Complaint fails to meet the pleading standard required to overcome a Rule 12(b)(6) motion to dismiss.

In response, UNest presses its claim that Ascensus fraudulently induced UNest to settle by making misrepresentations about the development of the Ascensus App. First, UNest argues that "Ascensus lied both to UNest and to the Court about its plans to enter the relevant markets and release an app nearly identical to that

offered by UNest. Any subsequent releases of potential claims against Ascensus by UNest, including any concomitant judgments, were contaminated by that lie, and must be set aside." (ECF No. 25 at 25.) UNest asks the Court to set aside the release because it was fraudulently obtained and claims that "[U]Nest is entitled to rescission of the Federal Settlement Agreement, and to be able to finally and fully pursue its claims against Ascensus." *Id.* at 29. UNest also challenges the application of res judicata on several bases. First, it argues that the claims made in the instant case "arise from a new nucleus of operative facts that were not known to UNest at the time of judgment in the [prior] Federal Court Action, and that have only arisen in the months since its entry." *Id.* at 31. Second, UNest argues that even if the facts did stem from the same set of facts, "equity would not permit the application of res judicata here" because Ascensus' fraudulent conduct is the kind of extraordinary circumstance that is at odds with the equitable policies underpinning claim preclusion. *Id.* at 32. Finally, UNest disputes the existence of a valid final judgment in the prior federal case, a necessary element of res judicata, because of Ascensus' alleged fraudulent misrepresentation. *Id.* at 33.[5]

## II. MOTION TO DISMISS STANDARD

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom*." Ruiz*

---

[5] UNest also vigorously argues that it has met the pleading standard for each of its claims against Ascensus. However, because the Court dispenses with this suit on procedural ground, it need not evaluate the sufficiency of UNest's specific counts and need not recite UNest's arguments at this point.

9

*v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The relevant question . . . in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed in toto to render plaintiffs' entitlement to relief plausible." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Twombly*, 550 U.S. at 569 n.14).

### III. DISCUSSION

UNest insists that the previous litigation has no bearing on the present lawsuit. To the contrary, the prior federal lawsuit is indeed relevant to the present lawsuit. The earlier case terminated when UNest and Ascensus[6] executed the Federal Settlement Agreement and filed a joint dismissal stipulation, which this Court then entered as an order. Ascensus, invoking the doctrine of res judicata and citing the terms of the settlement, has moved to dismiss the Complaint. Ascensus maintains that UNest has failed to state a claim for relief because each of its claims are barred both by claim preclusion and by the Federal Settlement Agreement's broad and comprehensive release. UNest objects to dismissal and disputes the validity of that settlement and, more specifically, the release. UNest argues that Ascensus fraudulently induced UNest to settle by making false representations about the Ascensus App during a preliminary injunction hearing. As a result, UNest contends

---

[6] In addition to UNest and Ascensus, Invesco, a non-party in the instant litigation, also executed the Federal Settlement Agreement. (ECF No. 23-1 at 2.)

that it relied on those misrepresentations when it agreed to settle, that the Settlement Agreement is invalid and unenforceable and, therefore, that the prior federal case did not terminate in a valid judgment for purposes of res judicata.

First, as a preliminary matter, the Court considers whether the release does, in fact, contemplate the claims asserted in UNest's Complaint. If the release is as all-encompassing as Ascensus urges, then the question becomes whether the release and the earlier judgment are valid or, as UNest contends, were fraudulently induced.

While UNest's Complaint makes mention of the Federal Settlement Agreement as part of its recitation of facts, it does not include a copy of the agreement as part of its initial filing. Ascensus did, however submit a copy of the Federal Settlement Agreement under seal. "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). An exception exists, however, "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (quoting *Watterson*, 987 F.2d at 3). As a result, "[w]hen the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Id.* (quoting *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998)). UNest does not dispute the authenticity of the

11

Federal Settlement Agreement, only its limits and validity. With the Federal Settlement Agreement properly before it, the Court must first determine whether UNest's claims in this case are barred by the prior release.

Ascensus challenges UNest's Complaint, in part, on the basis that UNest cannot state a claim for relief when such claims have been previously released. *See id.* at 34 (explaining that the trial court properly considered the parties' settlement agreement because "the appellants' complaint fails to state a claim unless appellee retains some measure of liability, which depends upon the interpretation of the 1998 Settlement Agreement . . . ."). UNest's ability to survive dismissal depends on an interpretation of the terms of the release in light of the claims it puts forth in the Complaint.

In Rhode Island, settlement agreements receive the same treatment as "any other contract . . . ." *Furtado v. Goncalves*, 63 A.3d 533, 538 (R.I. 2013). The Court will, therefore, "apply general contract law principles in construing this . . . settlement agreement." *Id.* According to the Rhode Island Supreme Court, "[w]hether a particular contract is or is not ambiguous is a question of law." *Young v. Warwick Rollermagic Skating Center, Inc.*, 973 A.2d 553, 558 (R.I. 2009) (quoting *Gorman v. Gorman*, 883 A.2d 732, 738 n. 8 (R.I. 2005)). If "a contract is determined to be clear and unambiguous, then 'the meaning of its terms constitute a question of law for the court . . . .'" *Id.* (quoting *Cassidy v. Springfield Life Ins. Co.*, 262 A.2d 378, 380 (R.I. 1970)). A court charged with a contract's interpretation "should read the contract 'in its entirety, giving words their plain, ordinary, and usual meaning.'" *Id.*

at 558 (quoting *Mallane v. Holyoke Mut. Ins. Co. in Salem*, 658 A.2d 18, 20 (R.I. 1995)).

With these principles in mind, the Court turns to the Federal Settlement Agreement. Like the Rhode Island Supreme Court in *Young*, the Court is "struck by the sweeping and comprehensive nature of the language that the release document contains" in this case. *Id.* at 559. By signing the Federal Settlement Agreement, UNest agreed to

> forever fully and completely release[] and discharge[] . . . Ascensus . . . of and from any and all actions, suits, claims, duties, causes of action, demands, obligations, liabilities, rights, damages (including punitive, exemplary, consequential, incidental or lost profit damages), or liability of any nature whatsoever, of any kind, whether known or unknown (including Unknown Claims, as defined below), asserted or unasserted, whether at law or in equity which they now have, or ever had or may have, arising out of, based upon or attributable to, in whole or in part, or relating in any manner to (1) the subject matter of (i.e., the facts giving rise to) the Litigation, (2) the Selling Agreement, or (3) any aspect of the RI Program (the "Claims Released by U-Nest").

(ECF No. 23-1 at 4.) The parties also agreed that "'Unknown Claims' means any claim that any Party does not know, or suspect exists in its favor at the time of the release of the Released Claims, including without limitation those which, if known, might have affected the decision to enter into this Settlement Agreement." *Id.* at 5. Furthermore, UNest and Ascensus

> expressly acknowledge[d] that they may discover facts in addition to or different from those now known or believed to be true with respect to the Release Claims, but that it is their intention to completely, fully, finally and forever extinguish any and all Released Claims, known or

13

> unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.

*Id.*

The Court is hard-pressed to find that the allegations asserted in UNest's Complaint were not contemplated by the all-encompassing release. UNest argues that its claims based upon the development of the Ascensus App and its claims that Ascensus made misrepresentations to UBT about UNest are distinct from the prior federal case and not covered by the release because they were continuous and/or occurred after the parties settled. These arguments are unavailing.

In the first instance, UNest's claims regarding the Ascensus App are "based upon or attributable to, in whole or in part . . . to . . . the subject matter of (i.e., the facts giving rise to) the [prior] Litigation . . .." *Id.* at 4. In both cases, UNest has asserted antitrust and anticompetition claims as well as tortious interference claims. UNest now seeks to differentiate those allegations as arising from new facts. That attempt is futile considering the provision in the release wherein the parties "expressly acknowledge[d] that they may discover new facts in addition to or different from those now known or believed to be true. . . ." *Id.* at 5.

In the second instance, UNest's allegations made "on information and belief" attempt to make out a claim, based on a new set of facts, that Ascensus made false representations about UNest to UBT in an effort to tarnish UNest's reputation with another 529 plan manager after the parties settled the prior federal lawsuit. This claim fails to satisfy the applicable pleading standard and, therefore, fails to provide

14

a basis for UNest's argument that its Complaint raises new claims not covered by the release. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The First Circuit has explained that "the pleader usually is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (citing *Powers v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991)). UNest's allegations regarding false representations made to UBT are devoid of specificity. UNest offers no assertions as to which individual made the false statements to UBT, what those statements were, or where they were made. (ECF No. 1 ¶¶ 98-101.)

UNest is then left with its allegations resting on the development and release of the Ascensus App to support its argument that its claims are not barred by the release. UNest's Complaints in both cases illustrate the many similarities between the two lawsuits and include many of the exact same counts (monopolization, attempt to monopolize, exclusive dealing, and denial of access to essential facility under the Sherman Act and tortious interference with business relations). UNest's attempt to resurrect its old claims based on new facts is precisely and explicitly prohibited by the Federal Settlement Agreement. The Court finds the language of the release clear and unambiguous.

Having found that the broad language of the release contemplates the claims asserted in UNest's Complaint, the remaining questions, as noted above, relate to the validity of the release and the prior judgment. Those questions, however, are not

15

properly before the Court. While the Federal Settlement Agreement release would be an applicable bar to the allegations made in UNest's Complaint, the Court does not, and indeed cannot, reach the issue of whether that release is enforceable against UNest. Along the same lines, this Court cannot consider the doctrine of *res judicata* because there remains a challenge as to the validity of the prior final judgment. UNest has alleged that the release, and therefore the dismissal stipulation, were obtained through fraudulent inducement and it argues that both the Settlement Agreement and the prior judgment must be set aside. It has not, however, properly sought the relief necessary to set aside the prior judgment and release.

The First Circuit has held that a plaintiff's "only route to relief from [a] settlement and underlying judgment is through application of Federal Rule of Civil Procedure Rule 60(b)." *George P. Reintjes Co., Inc. v. Riley Stoker Corp.*, 71 F.3d 44 (1st Cir. 1995). As a matter of procedure, this Court makes no further findings in this case.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss is DENIED without prejudice and the case is STAYED for ninety (90 days) during which time the

plaintiff may seek the necessary relief from judgment in C.A. No. 1:10-cv-00659-WES-PAS pursuant to Rule 60(b).

IT IS SO ORDERED.

_____
Mary S. McElroy,
United States District Judge

March 21, 2022